# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY EARL HISSONG, SR.,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>　　　　　　Respondent.<br>_____/ | 1:07-CV-01383 AWI SMS HC<br><br>FINDINGS AND RECOMMENDATION REGARDING SECOND AMENDED PETITION<br><br>[Doc. 15] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

PROCEDURAL HISTORY

Following a jury trial in the California Superior Court for the County of Tulare, Petitioner was convicted of six counts of violating California Penal Code section 288(a). As to all six counts, the jury found true a multiple-victim special circumstance. In addition, as to four of the counts, the jury found true a substantial-sexual-conduct special circumstance. (Cal. Penal Code § 1203.066(a)(8).)[1] Pursuant to section 667.61, Petitioner received a fifteen-years-to-life sentence for counts 1, 4, and 5, for each of three victims, totaling forty-five years to life. He also received the upper term of eight years for count 2, and for counts 3 and 6, he received two years each, one-third of the middle term, ordered to run concurrent to the forty-five years to life. (Lodged Doc. No. 4, at 2.)

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

1

1    Petitioner filed a timely notice of appeal. On April 13, 2007, the California Court of
2 Appeal, Fifth Appellate District affirmed the judgment. (Lodged Doc. No. 4.) Thereafter, the
3 California Supreme Court denied review on June 20, 2007. (Lodged Doc. Nos. 5, 6.)
4    Petitioner filed a state post-conviction collateral petition on September 24, 2007, in the
5 Tulare County Superior Court. The petition was denied on October 1, 2007. (Lodged Doc. Nos.
6 9, 10.)
7    Petitioner filed the initial federal petition for writ of habeas corpus on September 13,
8 2007. (Court Doc. 1.) He filed an amended petition on October 19, 2007, and the second
9 amended petition, of which this action is proceeding, on December 11, 2007. (Court Docs. 10,
10 15.)
11    Respondent filed an answer to the second amended petition on May 30, 2008. (Court
12 Doc. 25.) Petitioner did not file a traverse.

STATEMENT OF FACTS

14    Courtney M. stated that during 2000 to 2001, she babysat for Petitioner's two sons, and
15 she went to visit the boys on a few occasions. (RT 52.) She did not remember spending the
16 night at Petitioner's residence. (RT 53-54.) At trial, Courtney indicated that she did not recall
17 the incidents of molestation by Petitioner or statements she made to Farmersville Police
18 Detective Tami Ferguson.[2] (RT 54-75.)
19    Detective Ferguson testified that she interviewed Courtney on August 21, 2001. (RT 87.)
20 She freely disclosed that Petitioner had molested her by touching her private part on the inside of
21 the skin. (RT 89-90.) The Child Abuse Response Team ("CART") also interviewed Courtney
22 on August 24, 2001, while Detective Ferguson was present. (RT 90-91.) Courtney disclosed a
23 second incident which occurred on the couch when Petitioner licked his finger and touched her
24 private area. She stated that it hurt and she "kinda" screamed. (RT 91-92.) Courtney also stated
25 that she stayed at Petitioner's apartment "most weekends." (RT 92.) Courtney disclosed that the
26 following day, Petitioner put his tongue inside her private area. (RT 92-93.) Then just days prior

---

[2] Courtney was presented with several questions regarding her interview with Detective Ferguson.

to reporting the incident, Petitioner put his finger in her vagina and bit her breast.  (RT 93.)

Robert Chavez, a social worker at Kaweah Delta Hospital, interviewed Petitioner on August 21, 2001, and Petitioner confessed that he had molested his ten-year-old relative named Courtney.  (RT 113-116.)

Jerika L. testified that Petitioner touched her private area on the inside and outside of her clothing while she was his apartment.  (RT 121-127.)  Although she did not remember at trial, Jerika also told Investigator Mizner that Petitioner touched her private area with his tongue and pulled her shorts down.  (RT 127-128, 214-215, 227.)

Jessica L. testified that while she was in the passenger seat of Petitioner's car, he touched her inter thigh close to her private area and she moved away.  (RT 142.)  In a prior interview, Jessica stated that on a different occasion when she was sitting on the couch at Petitioner's apartment, he held her arm as she tried to get away.  He proceeded to touch her private part on top of her clothing with his hand.[3]  (RT 216-217.)

Charlene Jidd, Petitioner's wife's aunt, testified that in August of 2001, Petitioner admitted that he touched "the girls" in the wrong way.  (RT 172.)  She stated that Petitioner's aunt, Patricia McLaughlin, asked the family to gather for a meeting regarding something bad Petitioner had done to Courtney.[4]  (RT 174.)  Petitioner was present at this family gathering and apologized to Courtney.  (RT 176.)  Petitioner confessed stating that he did some bad things and he was sorry and needed help.  (RT 178.)

Virginia Vincent, Petitioner's mother, testified that she did not recall if Petitioner said something to her about touching the girls inappropriately.  (RT 188.)  She acknowledged that Petitioner and his wife babysit for Jerika in the summer of 2001.  (RT 188.)  She testified that Petitioner denied touching any of the girls.  (RT 191.)  However, she acknowledged that Petitioner disclosed he may have touched Courtney in the wrong way.  (RT 192.)

---

[3] She did not remember this incident or making the statement at the time of trial.  (RT 144-147.)

[4] At trial, Patricia McLaughlin, testified that as a result of severe head injury she did not remember anything after Christmas of 1974.  (RT 167-168.)  Therefore, she did not remember having a discussion involving Petitioner touching some girls in the wrong way, or being involved in a family discussion regarding the incidents. (RT 165-168.)

3

Deputy District Attorney Investigator Sharon Mizner testified that she interviewed Petitioner's mother, Virginia Vincent, who stated that Petitioner admitted to her he had touched Jerika with his tongue and hand and also touched Courtney. (RT 218-219.) Petitioner's mother also stated that Petitioner would nap with Jessica in the same bed. (RT 221.)

Sheriff Deputy Scott Shade, testified that on August 20, 2001, he interviewed Petitioner at Kaweah Delta Hospital. (RT 241-242.) Petitioner disclosed that he had molested his relative named Courtney. He indicated that while she was sitting on the couch or recliner at his apartment, he put his right hand on her left knee and started to caress her with ring and pinkie finger, then pushed her panties to the side, and rubbed her private area. (RT 243-244.) He disclosed that the second incident occurred again at his apartment while Courtney was sitting on the recliner, and he got in front of her on the floor, caressed her leg and put his hand in her private area. (RT 244.)

## DISCUSSION

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant

1  petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

2  B.     Standard of Review

3       This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

     The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.C. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.C.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.C. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

     While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.C. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.C. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.C. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.C. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.C. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.     <u>Exhaustion of State Court Remedies</u>

Respondent initially argues that all of Petitioner's claims are unexhausted. A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. <u>Picard v. Connor</u>, 404 U.S. 270, 276, 92 S.C. 509, 512 (1971); <u>Johnson v. Zenon</u>, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S.C. 887, 888 (1995) (legal basis); <u>Kenney v. Tamayo-Reyes</u>, 504 U.S. 1, 112 S.C. 1715, 1719 (1992) (factual basis).

In this instance, the only filing in the California Supreme Court was the petition for review, filed on April 23, 2007. (Lodged Doc. No. 5.) The sole claim raised in that petition challenged the imposition of a court security fee. (See Lodged Doc. No. 5, at 3.) Petitioner did not raise the three claims presented in the second amended petition, and such claims are therefore unexhausted. Nonetheless, as will be explained, the claims lack merit and must be denied. 28 U.S.C. § 2254(b)(1).

D.     <u>Conviction Based Upon Petitioner's Personal Guilty Plea</u>

Petitioner contends, in a conclusory fashion, that he was not convicted based upon a personal guilty plea and he never made a plea of "not guilty." (Sec. Amd. Pet. at 5.) Petitioner's claim lacks any foundation and defies logic.

As Respondent submits, in order for a petitioner to succeed on an application for a writ of habeas corpus, he must demonstrate that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The claim that Petitioner did not plead guilty fails to challenge the constitutional validity of his custody and preludes relief under § 2254. After receiving a full and fair trial by a jury of his peers and found guilty as charged, Petitioner cannot now attempt to challenge the fact he desired (in hindsight) to plead guilty in lieu of having a trial. There is simply no basis, legally or factually, upon which Petitioner can

6

support his challenge, and it therefore must be denied.

E.      Petitioner's Conviction Obtained By Use Of Perjured Testimony

Petitioner contends that his conviction was based upon perjury. Petitioner appears to challenge certain confessions he made to two different people who testified at trial. (Petition, at 5.)

A conviction violates the Fourteenth Amendment if it is obtained by the use of perjured testimony the prosecutor knows to be false. Napue v. Illinois, 360 U.S. 264 (1959). Petitioner bears the burden of demonstrating that the challenged testimony was indeed false, that the false testimony was material, and the prosecutor knew such testimony to be false when it was presented. Chambers v. Johnson, 218 F.3d 360, 363-364 (5th Cir. 2000). In the instant case, Petitioner does not allege or provide any evidence that the prosecution suborned perjury, and beyond his self-serving conclusory allegation there is no evidence to establish any falsity on the part of prosecution witnesses or that the prosecutor knew of such evidence to be false. An unsupported allegation of perjury is insufficient to warrant habeas corpus relief. See Beavers v. United States, 351 F.2d 507, 509 (9th Cir. 1965) (holding that "a petitioner must make a more substantial showing than merely charging perjury and making the unsupported claim that perjured testimony was knowingly used by the prosecuting authorities" to obtain relief (internal quotations and citations omitted)); Robinson v. United States, 348 F.2d 992, 993 (9th Cir. 1965) (denying habeas relief for "blanket charge of 'perjury'" which was unsupported by an factual detail whatsoever).

As Respondent submits, the evidence at trial consisted of testimony by social worker Robert Chavez who interviewed Petitioner on August 21, 2001, at Kaweah Delta Hospital. (RT 114-116.) Petitioner disclosed to Chavez that he molested his ten-year-old female cousin named Courtney. (RT 116.)

Sergeant Scott Shade of the Farmersville Police Department also interviewed Petitioner, and Petitioner confessed that on two occasions he touched his ten-year-old relative Courtney M. (RT 117, 228, 240-243.) Petitioner disclosed that one of the incidents with Courtney occurred on a couch or recliner in his apartment and he caressed her left leg. He then moved his hand up her

7

1  leg, pushed her panties to the side, and touched her vagina. (RT 243-244.) He stated that he
2  rubbed her vagina area up and down. (RT 244.) On the second occasion, Petitioner stated that
3  while Courtney was at his apartment on the recliner, he got down on the floor in front of her and
4  put his right hand of her leg and caressed it with his ring and pinkie fingers. (RT 245.) He then
5  reached up to her vagina, touched her clitoris, and rubbed the area. (Id.)

6  Petitioner has provided nothing more than his opinion that the testimony was false, which
7  is insufficient to meet his burden. United States v. Aichele, 941 F.2d 761, 766 (9th Cir. 1991).
8  Simply stated, Petitioner has not and can not show a violation simply because he contends that
9  false or perjured testimony was produced at trial, and his claim fails on the merits. Murtishaw v.
10 Woodford, 255 F.3d 926, 959 (9th Cir. 2001).

11 F.     Lack of Evidence to Support Conviction
12     Petitioner contends that his conviction was not founded upon "DNA, forensic physical or
13 medical evidence at all."
14     The law on insufficiency of the evidence claim is clearly established. The United States
15 Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a
16 federal court must determine whether, viewing the evidence and the inferences to be drawn from
17 it in the light most favorable to the prosecution, any rational trier of fact could find the essential
18 elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
19 Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16. The
20 victim's testimony standing alone was sufficient to convict Petitioner. See Bruce v. Turhune,
21 376 F.3d 950, 954-955 (9th Cir. 2004); see also Loeblein v. Dormire, 229 F.3d 724, 726 (8th Cir.
22 2000) (victim's testimony is, by itself, normally sufficient to sustain conviction); Cal. Evid. Code
23 § 411.
24     Although it is true the prosecution did not present DNA evidence, the jury was
25 nonetheless presented with evidence in the form of testimony by several witnesses. Specifically,
26 Farmersville Police Detective Tami Fergeson testified regarding an interview with Courtney M
27 who disclosed that sometime in November of 2000, while she was at Petitioner's apartment
28 watching television, he licked his finger and inserted it into her vagina. (RT 91-92, 108-109.)

On a different occasion while at Petitioner's house, he inserted his tongue into her vagina. (RT 92-93.) She stated that just days before the interview, Petitioner placed his fingers in Courtney's private area and bit her breast. (RT 77, 92-93.)

Several witnesses including, Charles Jidd (Petitioner's ex-wife's aunt), Robert Chavez (social worker), and Sergeant Shade, all testified as to instances where Petitioner confessed that he had molested Courtney. (RT 116, 169-177, 242-245, 247.) In addition, Sharon Mizner testified that Petitioner admitted to his mother, Virginia Vincent, that he had touched Jerika L. and Courtney.[5] (RT 188, 192-193, 218-219.) Mizner also testified that during an interview of Jerika, she stated that Petitioner touched her in her private area with both his hand and tongue. (RT 214-215, 227.) At trial, Jerika (who was nine years of age at time of trial) testified that, at age five, Petitioner rubbed her vagina. (RT 124-127, 130, 136.)

Jessica L. (age fourteen at time of trial) testified that when she was nine years old, she sat in the passenger seat of Petitioner's car and the two drove to the store. While she was in the car, Petitioner touched her inter thigh close to her private area, and she moved away from him. (RT 140, 142-144, 152.) In a prior interview, Jessica stated that on a different occasion when she was sitting on the couch at Petitioner's apartment, he held her arm as she tried to get away. He proceeded to touch her private part on top of his clothing with his hand. (RT 216-217.)

In light of the above evidence, there was sufficient evidence to support the jury's finding of guilt as to the six counts of child molestation, despite the lack of DNA evidence. Petitioner's claim must be denied.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and,

2. The Clerk of Court is directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

---

[5] At trial, Petitioner's mother denied or claimed she did not remember disclosing Petitioner's confession to a Investigator Mizner; however, Mizner testified as to the confession. (RT 188, 192-193, 218-219.)

1  the Local Rules of Practice for the United States District Court, Eastern District of California.
2  Within thirty (30) days after being served with a copy, any party may file written objections with
3  the court and serve a copy on all parties.  Such a document should be captioned "Objections to
4  Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served
5  and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the
6  objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
7  636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time
8  may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th
9  Cir. 1991).

12  IT IS SO ORDERED.
13  **Dated:    October 29, 2008**                    /s/ Sandra M. Snyder
                                                   UNITED STATES MAGISTRATE JUDGE